ORANGE RICE MILLING COMPANY, Plaintiff and Appellee, *v.* ANGEL BARASORDA, Defendant and Appellant.

No. 4657.—Argued May 3, 1929.—Decided January 31, 1930.

*O. B. Frazer* and *R. Castro Fernández,* for appellant.   *H. G. Molina,* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

This was an action in effect to recover the price of a thousand bags of rice which the plaintiff, Orange Rice Milling Co., alleged that it sold to the defendant, Barasorda, on the 24th day of June, 1926.  The complaint set up that the contract arose from the direct order of the Spencer Sales Co., which was the agent of the defendant.

The court found that the agency was sufficiently proved and, as it rendered the judgment for the plaintiff, necessarily that the said Spencer Sales Co. had due authority to make or order the shipment of the said thousand bags of rice.  The defendant Barasorda had denied the agency of the Spencer Sales Co. in general and also that he had received the particular brand or quality of rice ordered by him.

If the question of a general authority on the part of the Spencer Sales Co. is put aside, the case specifically turns upon the question of whether the delivery constituted 1,000 bags of "good fancy blue rose" rice.  According to the appellee the evidence of a contract was certain cables that passed between the parties.  The appellee, to our way of thinking, abandons, at least to a certain extent, the supposition of a general agency when it says:

"The sole question in this suit is whether Barasorda as a consequence of these cables was obliged to accept the 1,000 bags of rice

which his agent, Spencer, bought of the plaintiff, Orange Rice Milling Co., on the 23rd day of June, 1925 (should be 1926).''

As the defendant and appellant totally denies the agency and assigns error because the court decided that there was such agency, we shall give the matter some special consideration.

The court below did not analyze the evidence to show the agency or to define the limits thereof. The record does not disclose any specific letter or verbal agreement whereby the Spencer Sales Co. was constituted a general agent to buy rice for the defendant. The Spencer Sales Co. was in point of fact a trade name of a Mr. Spencer. The only thing in the record that tends to show a general agency or anything approaching thereto, is the declaration or declarations of Spencer himself. Aside from the general principle that an agency is not to be proved by the sole declaration of an agent, the whole record does not reveal any such general agency. Barasorda on the witness stand emphatically denied any such agency. To suppose that Spencer could go out and buy rice generally and make Barasorda responsible, appears entirely absurd. It could not be imagined that Barasorda would give anyone not completely subordinate to him the general right to buy rice especially where, as was the admitted fact, the compensation of Spencer was to proceed from the persons selling rice. Barasorda clearly did not intend that Spencer should buy whenever it pleased the latter to buy and we do not think that Spencer himself would so contend. The supposed general agency would also be void for want of definiteness; its limits were left totally undefined. At the utmost it was an agency to buy rice when and as ordered by Barasorda.

What really happened was that Spencer visited the Island at least once and his relations with Barasorda were of a very friendly character. Barasorda probably did say that he would buy of Spencer or through him. There is nothing, however, in the evidence to show that Spencer was anything

specifically more than a broker of rice. The appellant maintains that he was buying of Spencer and that the latter was in no sense an agent. We think, however, that the evidence reveals that Barasorda from time to time used Spencer as his broker and was attempting to do so when he ordered the thousand bags of rice.

Incidentally we find nothing to authorize the statement of the appellee that Spencer was made an agent to accept from the mills an order delivered to Spencer by Barasorda. Such may have been and possibly was Spencer's own belief, but as we have indicated, the evidence of this proceeds from Spencer himself. Therefore we have to look to the cables to find whether there was a contract between the parties and what that contract was.

On the 23rd of June, 1926, Barasorda sent the following cable to Spencer:

"Telegraph quick best price on good fancy blue rose during July."

On the same day Spencer answered as follows:

"Stocks fancy blue rose. This difficult to buy at present due to light offerings. Can probably buy $6 ¾ cif. Cannot buy for less than. How about lot #544 rice $6½ cif. This cheap."

To this cable Barasorda answered:

"Buy 1,000 pockets provided good fancy blue rose 6¾ ¢ equal quantity second half of June and first half month following."

On June 24, 1926, Spencer answered as follows:

"We cannot ship second-half of June. Have bought 1,000 pockets RMA inspection certificate fancy blue rose first half month July steamer Southseas. Can buy more same price, 1,000 pockets steamer Southseas. Telegraph answer quick immediate and necessary. Difficult to buy due to light offerings."

and on June 25th Barasorda cabled:

"There is more demand for better grades. We think you had better telegraph us on extra fancy blue rose."

With the exception of second cable wherein the word "fancy" belongs, we are transcribing these cables as they appear in the brief of the appellee because there are some differences in the record and it is a little confused. It appears also that when the Spencer Sales Co. received the order to buy a thousand bags of "good fancy blue rose" rice, the said company called up by telephone the Orange Rice Milling Co., and bought 1,000 pockets RMA inspection certificate "fancy blue rose" rice at the same price fixed by Barasorda. The theory of the appellee is that when Spencer cabled: "Have bought 1,000 pockets RMA inspection certificate fancy blue rose . . ." if Mr. Barasorda did not want this rice, he should have cabled somewhat as follows:

"Cancel. Will not accept RMA inspection certificate. My order was provided good fancy blue rose."

Such a duty on the part of Barasorda only arose if some former order of his was either so ample or indefinite that Spencer could derive an authority therefrom to order for or sell to Barasorda the goods that were actually shipped. One thing however appears from the brief of the appellee and that is, that Spencer knew or very probably knew, that the goods actually shipped were not what Barasorda and the trade in Porto Rico understood to be "good fancy blue rose" rice. Barasorda maintained that he wrote as soon as possible, even though he did not cable as suggested, and while we think that no duty was imposed upon him, we have no question of his good faith in dealing with Spencer. He evidently thought that he was ordering a very specific thing when he said "good fancy blue rose" and the general trend of the evidence is to support him.

So far as the duty to answer was concerned a similar question arose in *Freiría* v. *Cortés Brothers & Co.*, 32 P.R.R. 117, and we cited from 10 R.C.L. 1150, to the effect that in an oral conversation a man may be sometimes obliged to answer but that there was no rule of law that required a per-

son to answer a correspondence or which holds that mere silence should be regarded as an admission. Under the facts Barasorda was obliged to disaffirm an independent offer made by Spencer only on the theory that Spencer was in fact some general sort of agent authorized to act for Barasorda. Spencer offered Barasorda goods that the latter did not want under any circumstances.

It is unquestionably a fact, as the evidence reveals, that in the rice trade there is no such technical thing as "good" fancy blue rose rice. There is a fancy blue rose and an extra fancy blue rose rice. Nevertheless, the experts of the defendant showed that "good fancy blue rose" was a variety or grade of rice only a little inferior to extra fancy blue rose and so understood in Porto Rico, and as we have said, the indications are that Spencer also so undertood the matter. Therefore the ultimate fact in the case is that Barasorda gave an order for "good fancy blue rose" rice and that Spencer shipped him a fancy blue rose which was not the quality of rice that Barasorda had ordered. We may add to what we have said above by supposing that fancy blue rose was graded from 60 to 70 and that extra fancy was graded from 70 to 80. Then we should say what Barasorda ordered was something in the neighborhood of 70, while Spencer shipped something that was in the neighborhood of 60.

We are not quite sure what effect on the evidence was produced by the action of the court in striking out some of the defenses of Barasorda. This action was probably error, but whether it was error or not, Barasorda was entitled, in defending against the claim of the Orange Rice Milling Co., to offer testimony or evidence that would tend to defeat the claim. The burden was on the plaintiff to show a valid existing contract.

The court said that the word "good" described the condition of the "fancy blue rose" rice rather than a grade in itself, but we think the evidence shows the contrary. Likewise the evidence indicates that RMA certificate was a dis-

tinct brand of goods falling within the grade of "fancy blue rose".

Under no circumstance as revealed from the evidence, did Barasorda order or could he have used or sold advantageously the rice that was actually shipped to him. In other words, Barasorda did not get what he ordered and no estoppel arose against him. Hence the judgment appealed from should be reversed and the complaint dismissed.